1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15
16
17

MEGAN MING FRANCIS;
MATTHEW J. CONNELLY; MARY L.
DUDZIAK; MATTHEW L. JONES;
HIROSHI MOTOMURA;
CAMPAIGN FOR ACCOUNTABILITY; and
KNIGHT FIRST AMENDMENT INSTITUTE AT
COLUMBIA UNIVERSITY,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF JUSTICE,

        Defendant.

Civil Action No. _____

COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF

18
19

## INTRODUCTION

20

    1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

21

challenging the failure of the Department of Justice to produce records in response to Plaintiffs'

22

COMPLAINT – Page 1

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

FOIA request (the "Request") seeking all formal written opinions issued by the Office of Legal Counsel ("OLC") prior to February 15, 1994. The OLC's formal written opinions are the law of the Executive Branch. Established to centralize the Executive Branch's interpretation of the law, the OLC issues formal written opinions to definitively answer legal questions raised by agency officials or to resolve legal disputes between federal agencies. The opinions are, in form and function, legal rulings. They employ reasoned analysis, build on past decisions, and announce their legal conclusions in mandatory, not advisory, language. Once issued, the OLC's opinions are both controlling and precedential. The OLC not only expects and intends its opinions to bind federal officials and agencies, including the OLC itself, but federal officials and agencies have also treated the OLC's formal written opinions as binding, for decades and without apparent exception. In other words, the OLC's formal written opinions constitute final and authorative pronouncements of the law within the federal government. For that reason, the OLC has been characterized as the "Supreme Court of the Executive Branch."

2.      As the Executive Branch's legal arbiter, the OLC has issued legal opinions governing the full range of the Executive Branch's powers, policies, and responsibilities. It gave legal approval for President Bush's use of enhanced interrogation techniques, President Obama's use of drone strikes, and President Trump's imposition of a travel ban. The OLC's legal opinions have also defined the Executive Branch's discretion in enforcing the immigration laws; resolved ethical and constitutional disputes over the appointment of family members to government posts; required the Social Security Administration to accord benefits to the children of same-sex couples; prohibited the Department of Justice from indicting a sitting president; and much more.

COMPLAINT – Page 2

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1    3.    Although the OLC's formal written opinions set the law for our government, the

2    OLC has published only a fraction of them. The unpublished remainder constitute "secret law."

3    By concealing this governing law, the OLC has not only defied Congress's intent in enacting FOIA

4    to extinguish secret law, but also violated fundamental democratic principles. The government's

5    reliance on secret law undermines public accountability, democratic self-governance, and the legal

6    and historical record of our government's conduct.

7    4.    To help the public access this secret law and to aid Plaintiffs' scholarly research

8    into our country's legal and historical record, Plaintiffs filed a FOIA request seeking all of the

9    OLC's formal written opinions issued prior to February 15, 1994.[1]

10    5.    Plaintiffs now file this suit to enforce that request in light of the OLC's failure to

11    timely process and produce the requested records. Plaintiffs seek, principally, an injunction

12    requiring the OLC to process and produce its formal written opinions.

13                        **JURISDICTION AND VENUE**

14    6.    This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and

15    28 U.S.C. § 1331.

16    7.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

17                                **PARTIES**

18    8.    Matthew J. Connelly is a Professor in the Department of History at Columbia

19    University. His work focuses on covert operations, state surveillance, and war powers. He has

20

21    _____
      [1] A true and correct copy of this request is attached hereto as **Exhibit A**.

22

COMPLAINT – Page 3

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1    spent several years preparing a history of official secrecy in the United States based on research at

2    presidential libraries and the U.S. National Archives. Without access to all of the OLC's formal

3    written opinions, however, it has been difficult for him to determine how presidents have made

4    crucial decisions on behalf of the American people even decades in the past, and to learn from past

5    experiences and apply any lessons to the future.

6         9.    Mary L. Dudziak is the Asa Griggs Candler Professor of Law at Emory University

7    School of Law. She writes and teaches about civil rights history, foreign relations history,

8    constitutional law, and the history of war's impact on American law and politics. She has a

9    particular scholarly interest in OLC opinions regarding the use of force, especially, but not limited

10   to, opinions that discuss (1) whether a specific use of force is lawful, (2) whether a specific use of

11   force is within the president's authority without a congressional authorization, and (3) what the

12   scope of any existing authorizations may be.

13        10.   Megan Ming Francis is an author and Associate Professor in the Department of

14   Political Science at the University of Washington. She studies American politics, race, and the

15   development of constitutional law. She is especially interested in OLC opinions that relate to (1)

16   questions of criminal procedure or criminal justice, (2) workplace discrimination, and (3) housing

17   discrimination, particularly any opinions related to the increased incidence of housing

18   discrimination in the 1940s, 50s, and 60s. She also has a particular interest in OLC opinions that

19   address civil rights issues related to education, including those that help illuminate how the federal

20   government dealt with the vastly changed civil rights landscape following the Supreme Court's

21

22

COMPLAINT – Page 4

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1    decision in *Brown v. Board of Education*. Her primary place of business is in Seattle, Washington

2    and she resides in King County, Wash.

3        11.    Matthew L. Jones is the James R. Barker Professor of Contemporary Civilization

4    in the Department of History at Columbia University. He studies the intersection of new

5    communications technologies and the legal and regulatory structures that govern their surveillance

6    in the United States and its Five Eyes allies. He has undertaken a detailed study of the drafting and

7    subsequent interpretation of Executive Order 12,333, based on extensive work at presidential

8    libraries and via FOIA. He is particularly interested in OLC opinions on these issues, as well as on

9    information warfare and information operations.

10       12.    Hiroshi Motomura is the Susan Westerberg Prager Distinguished Professor of Law

11   at the University of California, Los Angeles School of Law. His research has focused on a variety

12   of immigration and citizenship law topics. He is interested in OLC opinions that relate to these

13   topics, including, but not limited to, (1) the evolution of executive branch understandings of state

14   and local authority to enforce immigration law, (2) the history of discretion in the enforcement of

15   immigration law by federal executive branch officials, and (3) the role of the federal executive

16   branch in the formulation of immigration law and policy.

17       13.    Campaign for Accountability ("CfA") is a non-profit, non-partisan organization

18   that uses litigation, research, and advocacy to hold public officials accountable. CfA works on

19   behalf of the public interest to expose corruption, negligence, and unethical behavior wherever it

20   may occur. As part of its research, CfA uses government records made available to it under public

21   information laws to investigate public officials and government agencies.

22

COMPLAINT – Page 5

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

14.     The Knight First Amendment Institute at Columbia University ("Knight Institute") is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Public education is essential to the Knight Institute's mission. Obtaining information about government activity, analyzing that information, and publishing and disseminating it to the press and public are among the core activities the Knight Institute was established to conduct. The Knight Institute is a "person" within the meaning of 5 U.S.C. § 551(2).

15.     The Department of Justice ("DOJ") is an "agency" within the meaning of 5 U.S.C. § 552(f). The OLC is a component of the DOJ. The DOJ and the OLC have possession of and control over all of the requested records.

## FACTUAL BACKGROUND

### *The Office of Legal Counsel*

16.     In 1789, Congress created the position of Attorney General and charged the Attorney General with providing legal "advice and opinion" to the Executive Branch:

> [T]here shall also be appointed a meet person, learned in the law, to act as attorney-general for the United States, who shall be sworn or affirmed to a faithful execution of his office; whose duty it shall be . . . to give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments.

Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93.[2]

---

[2] The Attorney General's opinion-writing duties are currently codified in two provisions of the federal code, *see* 28 U.S.C. § 511 ("The Attorney General shall give his advice and opinion on questions of law when required by the President."); *id.* § 512 ("The head of an executive department may require the opinion of the Attorney General on questions of law arising in the administration of his department."), which correspond to the Judiciary Act of 1789, *see* Judiciary Act of 1789, ch. 20, § 35, 1 Stat. 73, 93 (charging the Attorney General with "giv[ing] his advice and

COMPLAINT – Page 6

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

17.     Since 1933, however, the Attorney General has delegated "virtually all" of his opinion-writing duties to the OLC.[3] Created under a different name that year, the OLC's "core function" is to settle legal questions and to resolve interagency disputes.[4] For those purposes, federal regulations have—since 1969—required the OLC to "prepar[e] the formal opinions of the Attorney General" and provide "informal opinions and legal advice to the various agencies of the Government."[5] Since 1979, Executive Order 12,146 has also directed executive agencies to submit legal disputes to the OLC for resolution "[w]henever two or more Executive agencies are unable to resolve a legal dispute between them." Exec. Order No. 12,146, §§ 1–4, 44 Fed. Reg. 42,657 (1979).

18.     The OLC's formal written opinions bind the Executive Branch in its interpretation of the law upon issuance, unless and until they are withdrawn or reconsidered by the OLC, displaced by a judicial ruling, or overruled by either the president or Attorney General.[6] Because

---

opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments").

[3] Douglas W. Kmiec, *OLC's Opinion Writing Function: The Legal Adhesive for A Unitary Executive*, 15 Cardozo L. Rev. 337, 337 (1993).

[4] Memorandum from David J. Barron, Acting Assistant Att'y Gen., Office of Legal Counsel, to Attorneys of the Office, Re: Best Practices for OLC Legal Advice and Written Opinions 1 (July 16, 2010) [hereinafter Best Practices Memorandum], *available at* http://www.justice.gov/olc/pdf/olc-legal-advice-opinions.pdf (The "OLC's core function . . . is to provide controlling advice to Executive Branch officials on questions of law.") (**Exhibit B**).

[5] *Compare* 28 C.F.R. § 0.25 (2019), *with* 28 C.F.R. § 0.25 (1969).

[6] *See* Randolph D. Moss, *Executive Branch Legal Interpretation: A Perspective from the Office of Legal Counsel*, 52 Admin. L. Rev. 1303, 1305 (2000); *see also* Daphna Renan, *The Law Presidents Make*, 103 Va. L. Rev. 805, 816 (2017).

COMPLAINT – Page 7

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1   overruling by the president or Attorney General "happens rarely," the OLC generally has the final

2   word on how the Executive Branch interprets and applies the law.[7]

3           19.     The OLC's supremacy is a result of both function and design. From the early days

4   of the republic, Attorney General opinions "officially define[d] the law" and were "final and

5   conclusive." According to an 1854 opinion from Attorney General Caleb Cushing,

6               [i]n the discharge of the [opinion-writing function], the action of the
                Attorney General is quasi judicial. His opinions officially define the law, in
7               a multitude of cases, where his decision is in practice final and conclusive
                . . . .
8
                Accordingly, the opinions of successive Attorneys General, possessed of
9               greater or less amount of legal acumen, acquirement, and experience, have
                come to constitute a body of legal precedents and exposition, having
10              authority the same in kind, if not the same in degree, with decisions of the
                courts of justice.
11
12   Office and Duties of the Attorney General, 6 Op. Att'y Gen. 326, 334 (1854). This understanding

13   of the Attorney General's opinions remained after the OLC took over the opinion-writing

     function.[8]
14
15           20.     When the "rise of agency general counsels" in the Executive Branch threatened this

16   understanding, Attorney General Griffin Bell began taking steps in 1977 to cement the role of the

17   OLC as the preeminent expositor of Executive Branch law—"a centralized and singular voice of

     executive branch legality."[9] To that end, Bell increased the volume of the OLC's opinion writing;
18

19
     _____
20       [7] See Renan, supra note 6, at 816.

21       [8] See Moss, supra note 6, at 1320.

         [9] See Renan, supra note 6, at 819–21.
22

     COMPLAINT – Page 8

                                                    Katherine George, WSBA 36288
                                                    Johnston George LLP
                                                    2101 4th Ave., Suite 860
                                                    Seattle, WA 98121
                                                    (206) 832-1820
                                                    kathy@johnstongeorge.com

1  "directed [the] OLC to compile and begin to publish select opinions"[10]; secured funding for the

2  OLC to professionalize its system of research[11]; and instituted polices meant to insulate the OLC

3  from political pressures.[12] These efforts and others affirmed the OLC's role "as a singular legal

4  expositor,"[13] with the "unique role of . . . issuing legal opinions for the executive branch as a

5  whole."[14] In this way, the OLC became, as some former officials have described it, akin to "the

6  Supreme Court of the Executive Branch."[15]

7       21.    Consistent with this "quasi-judicial role," the OLC has established processes for

8  requesting, drafting, and publishing opinions which are enshrined in two memoranda. Although

9  these memoranda post-date the period covered by the Request, they do not introduce new practices.

10  Rather, they "reaffirm[] the longstanding principles"[16] that have been followed by OLC officials

11  for decades.

12

---

13      [10] *Id.* at 819–20.

14      [11] *Id.* at 820–21 & n.54.

        [12] *Id.* at 822–23.

15      [13] *Id.* at 822.

16      [14] *Id.* at 824.

17      [15] *Homeland Security Secretary 'Fully Confident' in Legality of Obama's Immigration Action*, PBS NewsHour
(Nov. 24, 2014, 6:35 PM), *available at* http://www.pbs.org/newshour/bb/homeland-securitysecretary-fully-
confident-legality-obamas-immigration-action [https://perma.cc/4MSL-2C6Q] (quoting Jeh Johnson, former

18  Secretary of the Department of Homeland Security); *see also* John O. McGinnis, *Models of the Opinion Function of
the Attorney General: A Normative, Descriptive, and Historical Prolegomenon*, 15 Cardozo L. Rev. 375, 375–76
(1993) ("Since the beginning of the Republic, the executive branch has made formal pronouncements [through the

19  Attorney General and the OLC] on constitutional and statutory issues of such a substantial scope and variety that
they rival the opinions of the Supreme Court.").

20      [16] *See* Memorandum from Steven Bradbury, Principal Deputy Assistant Attorney Gen., to Attorneys of the Office
of Legal Counsel, at 1 (May 16, 2005), *available at* https://www.justice.gov/sites/default/files/pages/

21  attachments/2014/07/11/olc-best-practices2005.pdf [https://perma.cc/GNU6-DKKU] (**Exhibit C**); Barron, *supra*
note 4.

22

COMPLAINT – Page 9

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1        22.    As an initial matter, agencies asking the OLC to settle a legal question or resolve a

2    dispute must comply with a number of procedural and jurisdictional requirements. For example,

3    independent agencies—that is, those whose heads do not serve at the pleasure of the president—

4    must confirm in writing that they will conform their conduct to the OLC's opinion. (The OLC does

5    not require this of agencies whose heads serve at the pleasure of the president because it is

6    understood—by virtue of the president's direct control of those agencies—that they will conform

7    their conduct to the OLC's opinions.)

8        23.    All requesting agencies are also required to make written submissions much like

9    parties in a case.[17] They set out legal arguments against any opposing agency's view and, in some

10   cases, reply to each others' arguments. Even if only a single agency makes the request, that agency

11   must submit its own detailed analysis of the relevant legal questions in order for the OLC to

12   consider its case.[18] In their analyses, "agencies appeal to precedents and other well-established

13   principles . . . and OLC deliberates on the principles and precedents and then writes an opinion

14   which can be measured against established law."[19]

15       24.    The OLC's resulting opinions closely resemble judicial opinions. For example, the

16   OLC treats its own opinions and those of the Attorney General as a system of precedent and

17   accordingly gives them "great weight."[20] The OLC "will not lightly depart from such past

18

19       [17] McGinnis, *supra* note 15, at 426–27 (1993).

20       [18] *Id*. at 426.

    [19] *Id.* at 428.

21       [20] Barron, *supra* note 4, at 2.

22

COMPLAINT – Page 10

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1    decisions, particularly where they directly address and decide a point in question."[21] As such, OLC

2    opinions not only govern the Executive Branch, but also function as the governing law of the OLC

3    itself.

4            25.    The OLC also observes an analog to Article III's case-or-controversy limitation.

5    The agency "generally avoids undertaking a general survey of an area of law or a broad, abstract

6    legal opinion."[22] Rather, the OLC issues opinions for which there is a "practical need," such as

7    when there is a dispute between two agencies.[23] When drafting an opinion, the OLC "focus[es]

8    intensively on the central issues raised by a question of law and [tries], where possible, [to] avoid

9    addressing issues not squarely presented."[24]

10           26.    As a result, the OLC's opinions are both "case specific and precedent based."[25]

11   They create "a body of formal, written law that is relied upon, distinguished, and evaluated over

12   time."[26]

13           27.    This body of law is critically important to understanding the government's powers,

14   policies, and responsibilities, as well as the private rights of individuals. That has been true since

15   long before the OLC took over the Attorney General's opinion-writing function. As Attorney

16   General Cushing recognized in 1854, these opinions decide not just questions relevant to "the

17

18   _____

       [21] Bradbury, *supra* note 16, at 2.

19     [22] *Id*.

       [23] *Id*. at 1.

20     [24] *Id*. at 2.

       [25] *See* Renan, *supra* note 6, at 815.

21     [26] *Id*.

22

     COMPLAINT – Page 11                                    Katherine George, WSBA 36288
                                                            Johnston George LLP
                                                            2101 4th Ave., Suite 860
                                                            Seattle, WA 98121
                                                            (206) 832-1820
                                                            kathy@johnstongeorge.com

1  action of public officers in administrative matters," but also to "questions of private right." Office

2  and Duties of the Attorney General, 6 Op. Att'y Gen. at 334.[27]

3       28.    For example, the OLC has issued opinions regarding the use of force under the War

4  Powers Resolution.[28] By 1984, some of these opinions had "been rendered in connection with the

5  deployment of United States Armed Forces in Lebanon, the provision of military assistance and

6  intelligence to our allies in Central America, the deployment of sophisticated radar aircraft in Chad

7  and in the Sinai, responses to an armed attack on our armed forces in the Gulf of Siddra, the

8  deployment of troops to Grenada, and in various other circumstances."[29] More recently, in May

9  2019, the OLC published an opinion concluding that the Food and Drug Administration does not

10  have the authority to regulate lethal injection drugs. As a result of that opinion, the Justice

11  Department recently scheduled its first federal executions in sixteen years.[30]

12       29.    The OLC has published "only a fraction" of its formal written opinions.[31]

13  Originally, the office did not print or publish *any* opinions that were not signed by the Attorney

14  General.[32] In 1977, the OLC began to publish a volume of selected opinions given "their value as

15

16  [27] Former OLC lawyer and then–Judge Samuel A. Alito, Jr. reiterated Cushing's point in a 1993 law review article. *See* Samuel A. Alito, Jr., *Change in Continuity at the Office of Legal Counsel*, 15 Cardozo L. Rev. 507, 509–10 (1993) (explaining that "many of the questions on which OLC opines do involve private rights").

17  [28] Office of Legal Counsel, Dep't of Justice, *Overview of the War Powers Resolution*, at 271, *available at*

18  https://www.justice.gov/file/23691/download (explaining that the OLC had provided opinions on the War Powers Resolution "[o]n a number of occasions").

    [29] *Id.*

19  [30] Alan Neuhauser, *Barr Orders DOJ to Resume Death Penalty*, U.S. News & World Report (July 25, 2019),

20  *available at* https://www.usnews.com/news/politics/articles/2019-07-25/attorney-general-barr-orders-justice-department-to-resume-death-penalty.

    [31] Trevor Morrison, *Stare Decisis in the Office of Legal Counsel*, 110 Colum. L. Rev. 1448, 1476 (2010).

21  [32] Foreword, 1 Op. O.L.C., at vi (1977).

22

COMPLAINT – Page 12

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

precedents and as a body of executive law on important matters."[33] According to the foreword to the first volume, however, approximately 75 percent of the 1977 opinions were excluded from publication.[34]

30.    After 1977, the OLC stopped revealing how many opinions were excluded from its volumes. Some OLC volumes note that a "significant" number were excluded.[35] These statements are consistent with the views of at least one former OLC official, who has stated that the "published opinions are only the tip of the iceberg."[36] For example, the same OLC official noted that the office "gave 625 opinions to outside agencies in 1991."[37] But the 1991 volume of OLC opinions published only 13 opinions, or about 2%.

31.    More recently, the Sunlight Foundation obtained the OLC's internal list of OLC opinions issued between 1998 and 2012. Comparing the list with the OLC opinions that the office had made public either through its volumes or through FOIA productions, the Sunlight Foundation found that the OLC kept almost 40 percent of the office's opinions secret over that period.[38] The level of secrecy has varied by the administration, however. For example, the OLC kept 89 percent

---

[33] *Id.* at v.

[34] *Id.*

[35] *See, e.g.*, Foreword, 1 Op. O.L.C., at vi (1978).

[36] McGinnis, *supra* note 15, at 376.

[37] *Id.* at 423 n.181.

[38] *Id.*

COMPLAINT – Page 13

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1    of opinions from President Bush's first term secret, compared to 37 percent from President

2    Obama's first term.[39]

3    32.    The OLC chooses which of its opinions to publish pursuant to a "longstanding

4    internal process"[40] of its own creation. First, drafting attorneys and front-office personnel make

5    preliminary recommendations on whether to publish an opinion.[41] Next, the internal OLC

6    Publication Review Committee reviews opinions and makes their own recommendations. If the

7    Review Committee concludes an opinion is appropriate for publication, it then solicits the views

8    of the Office of the Attorney General, the Office of the Counsel to the President, and the agencies

9    who either requested the opinion or who would likely be affected by its publication. Although the

10   Review Committee will "[t]ak[e] this input into account," it is the Committee that is ultimately

11   responsible for "mak[ing] a final judgment about whether the Office should publish the opinion."[42]

12   *The FOIA Request*

13   33.    On February 15, 2019, Plaintiffs submitted the Request to the OLC seeking all of

14   the OLC's formal written opinions issued prior to February 15, 1994.

15   34.    The Request sought all such opinions, including, but not limited to:

16   (1) Opinions resolving interagency disputes;

17   (2) Opinions adjudicating or determining private rights;

18

19   [39] Daniel Schuman & Adeeb Sahar, *39% of Office of Legal Counsel Opinions Kept from the Public*, Medium (Jun. 17, 2018), *available at* https://medium.com/@danielschuman/39-of-office-of-legal-counsel-opinions-kept-from-the-public-f9c32055e6ab [https://perma.cc/VLV9-PS6U].

20   [40] Barron, *supra* note 4, at 5.

     [41] Bradbury, *supra* note 16, at 4.

21   [42] Barron, *supra* note 4, at 5.

22

COMPLAINT – Page 14

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1

(3) Opinions that interpret statutes or other authorities that impose non-
    discretionary legal obligations on federal agencies or officials;

2

3

(4) Opinions determining that a federal statute is unconstitutional in whole
    or in part and that, as a result, federal agencies may decline to give the
    statute effect; and

4

5

(5) Opinions concerning the scope of presidential power, particularly those
    regarding the use of force, surveillance, and the formulation and
    enforcement of immigration law and policy.[43]

6

---

7

[43] Published OLC opinions are attached hereto as examples of opinions falling into the categories listed here. For examples resolving interagency disputes, see Office of Legal Counsel, Dep't of Justice, *FBI Authority to Charge User Fees for Record Check Services* (1991), *available at* https://www.justice.gov/olc/file/626871/download [https://perma.cc/WK2G-H885] (**Exhibit D**) (concluding that the FBI had the authority to charge the Department of State user fees for FBI record check services in certain circumstances); Office of Legal Counsel, Dep't of Justice, *The Authority of the Equal Employment Opportunity Commission To Order a Federal Agency To Pay a Monetary Award To Remedy a Breach of a Settlement Agreement* (2008), *available at* https://www.justice.gov/opinion/file/833591/download [https://perma.cc/5YX2-TX24] (**Exhibit E**); Office of Legal Counsel, Dep't of Justice, *Payment of Back Wages to Alien Physicians Hired Under H-1b Visa Program*, 2008 WL 825557 (2008), *available at* https://www.justice.gov/file/482131/download [https://perma.cc/H22V-HUV6] (**Exhibit F**);.

8

9

10

11

For examples on private rights, see Office of Legal Counsel, Dep't of Justice, *Proposed Award of Honorary British Knighthood to Retiring Military Officer* (1996) (unpublished OLC opinion determining that retired military officers remain subject to the Emoluments Clause), *cited in* Office of Legal Counsel, Dep't of Justice, *Applicability of the Emoluments Clause and the Foreign Gifts and Decorations Act to the President's Receipt of the Nobel Peace Prize*, *available at* https://www.justice.gov/file/18441/download [https://perma.cc/E4X2-CA23] (**Exhibit G**); Office of Legal Counsel, Dep't of Justice, *Whether the Defense of Marriage Act Precludes the Nonbiological Child of a Member of a Vermont Civil Union From Qualifying for Child's Insurance Benefits Under the Social Security Act* (2007), https://www.justice.gov/file/451616/download [https://perma.cc/8TW4-UX8D] (**Exhibit H**).

12

13

14

15

For examples about agencies' or officials' non-discretionary legal obligations, see Office of Legal Counsel, Dep't of Justice, *Scope of the Term "Particular Matter" Under 18 U.S.C. 208* (1987), *available at* https://www.justice.gov/olc/page/file/1009471/download [https://perma.cc/ZB7H-736V] (**Exhibit I**) (concluding that 18 U.S.C. § 208 barred federal officials and any associated entities from participating in rulemaking, general policy matters, or adjudications in which the official or the associated entities had a private financial interest); *Whether the Defense of Marriage Act Precludes the Nonbiological Child of a Member of a Vermont Civil Union From Qualifying for Child's Insurance Benefits Under the Social Security Act*, *supra*; Office of Legal Counsel, Dep't of Justice, *Payment of Attorney's Fees Under the Equal Access to Justice Act* (1994) (unpublished OLC opinion concerning the Department of Justice's obligation to pay attorneys' fees under the Equal Access to Justice Act), *cited in* Office of Legal Counsel, Dep't of Justice, *Responsibility of Agencies to Pay Attorney's Fee Awards Under the Equal Access to Justice Act* (2007), https://www.justice.gov/file/451596/download [https://perma.cc/9DVV-R5S6] (**Exhibit J**) (determining which agency is, under the Equal Access to Justice Act, responsible for paying a fee award and citing the 1994 opinion as "acknowledging DOJ's responsibility to pay [an] EAJA fee award where DOJ had intervened in bankruptcy litigation").

16

17

18

19

20

21

For examples on the constitutionality of statutes, see Office of Legal Counsel, Dep't of Justice, *Constitutionality of the Direct Reporting Requirement in Section 802(e)(1) of the Implementing Recommendations of the 9/11*

22

COMPLAINT – Page 15

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1

2      35.     Plaintiffs requested a waiver of document search, review, and duplication fees on

3   the grounds that (a) disclosure of the requested records is in the public interest and is "likely to

4   contribute significantly to public understanding of the operations or activities of the government

5   and is not primarily in the commercial interest of the requester," 5 U.S.C. § 552(a)(4)(A)(iii); (b)

6   Plaintiffs qualify as "educational . . . institution[s]" whose purposes include "scholarly . . .

7   research" and the records are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II); and,

8   (c) Plaintiffs are "representative[s] of the news media" within the meaning of FOIA and the records

9   are not sought for commercial use, 5 U.S.C. § 552(a)(4)(A)(ii)(II).

10                                        *The OLC Response*

11      36.     On March 15, 2019, the OLC acknowledged receipt of the Request by email. The

12  OLC stated that it had "determined that there likely are many thousands of records that may be

13  responsive to your request." As a result, it extended its deadline to respond to the Request by ten

14  days and assigned the Request to the "complex" processing track. The OLC stated that the Request

15

16

17  _____

    *Commission Act of 2007* (2008), *available at* https://www.justice.gov/file/477336/download
18  [https://perma.cc/BA7R2NZ9] (**Exhibit K**); Office of Legal Counsel, Dep't of Justice, *Legal Authority to Withhold Information from Congress* (1998) (unpublished OLC opinion), *cited in Constitutionality of the Direct Reporting Requirement, supra,* at 18–19 (quoting the unpublished opinion of 1998 for the proposition that "the 'application of [statutory] reporting requirements . . . is limited by a constitutional restraint—the executive branch's authority to control the disclosure of information when necessary to preserve the Executive's ability to perform its constitutional responsibilities'" (alterations in original)).

19

20      For examples on the scope of presidential power, see Office of Legal Counsel, Dep't of Justice, *Authority of the President to Blockade Cuba* (1961), *available at* https://www.justice.gov/olc/file/477221/download
21  [https://perma.cc/8G44-XLWZ] (**Exhibit L**) (concluding that the president could blockade Cuba as an incident to a state of war).

22

    COMPLAINT – Page 16                                      Katherine George, WSBA 36288
                                                             Johnston George LLP
                                                             2101 4th Ave., Suite 860
                                                             Seattle, WA 98121
                                                             (206) 832-1820
                                                             kathy@johnstongeorge.com

1   could potentially be transfered to the "simple" processing track if Plaintiffs narrowed the scope of

2   the Request. The OLC also deferred adjudicating Plaintiffs' request for a fee waiver.

3       37.     On March 21, 2019, Plaintiffs spoke with Jared Kaprove of the OLC by phone. The

4   parties discussed possible ways to narrow the Request or otherwise ease the administrative burden

5   on the OLC to process the Request, including by relying for purposes of litigation on a sample of

6   the opinions responsive to the request.

7       38.     On May 2, 2019, Plaintiffs presented a sampling proposal to the OLC via email to

8   Mr. Kaprove. Plaintiffs have not received a substantive response to their proposal.

9       39.     Over a hundred working days have passed since the OLC first received Plaintiffs'

10  request.

11      40.     To date, the OLC has not complied with the Request.

12      41.     Plaintiffs have exhausted all applicable administrative remedies.

13                              **CAUSES OF ACTION**

14      42.     Defendant's failure to comply with Plaintiffs' request within the statutory time limit

15  violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and Defendant's corresponding regulations.

16      43.     Defendant's failure to promptly make available records responsive to the Request

17  violates FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendant's corresponding regulations.

18      44.     Defendant's failure to grant Plaintiffs' request for a waiver of search, review, and

19  duplication fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), (iii), and Defendant's

20  corresponding regulations.

21

22

COMPLAINT – Page 17

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1

**PRAYER FOR RELIEF**

2       WHEREFORE, Plaintiffs respectfully request that this Court:

3       A.      Order Defendant to conduct a thorough search for records responsive to Plaintiffs'

4                request;

5       B.      Order Defendant immediately to process any responsive records for release, and to

6                release them to Plaintiffs;

7       C.      Enjoin Defendant from charging Plaintiffs search, review, and duplication fees

8                relating to the Request;

9       D.      Award Plaintiffs their reasonable costs and attorney fees incurred in this action; and

10      E.      Grant such other and further relief as the Court may deem just and proper.

11

12                                        Respectfully submitted,

13                                         /s/ Katherine George
                                          Katherine George (WSBA 36288)
                                          Johnston George LLP
14                                        2101 4th Ave., Suite 860
                                          Seattle, WA 98121
15                                        (206) 832-1820
                                          kathy@johnstongeorge.com
16
                                          Daniela Nogueira
17                                        Alex Abdo (*pro hac vice* pending)
                                          Jameel Jaffer (*pro hac vice* pending)
18                                        Knight First Amendment Institute
                                           at Columbia University
19                                        475 Riverside Drive, Suite 302
                                          New York, NY 10115
20                                        (646) 745-8500
                                          alex.abdo@knightcolumbia.org
21

22

COMPLAINT – Page 18

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com

1  DATED: August 21, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

COMPLAINT – Page 19

Katherine George, WSBA 36288
Johnston George LLP
2101 4th Ave., Suite 860
Seattle, WA 98121
(206) 832-1820
kathy@johnstongeorge.com